IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:15-cv-01765-M |
| | § | |
| BHMDF, LTD., a Texas Limited Partnership; ARMADILLO ENTERTAINMENT CONCEPTS, INC.; RMADILO, INC.; RIVA CANO SMITH; and ROBERT E. SMITH, | § § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment [ECF No. 20]. For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.      BACKGROUND

PNC Bank ("PNC") brought suit to recover on defaulted promissory notes and guaranty agreements. BHMDF, Ltd. borrowed money from BMC Capital, LP ("Lender") in two agreements executed on March 28, 2007. The first agreement included: 1) a promissory note for $975,000.00 in principal bearing 7.95% annual interest; 2) a deed of trust to Lender on property in Brownsville, Texas; 3) an assignment granting Lender a security interest in rents on the Brownsville Property; and 4) a commercial security agreement granting Lender a security interest in furniture and fixtures on the Brownsville property. These documents together constitute the "Brownsville Loan." The Brownsville Loan was guaranteed by four guaranty contracts executed on March 28, 2007, by Armadillo Entertainment, RMADILO, Riva Cano Smith, and Robert E. Smith (collectively "Guarantor Defendants"). Speeds Plus, Inc., also executed a separate guaranty contract on the Brownsville Loan.

1

The second agreement included: 1) a promissory note for $1,950,000.00 in principal bearing 7.95% annual interest; 2) a deed of trust on property in Fort Worth, Texas; 3) an assignment granting Lender a security interest in rents on the Fort Worth property; and 4) a commercial security agreement granting Lender a security interest in furniture and fixtures on the Fort Worth Property. These documents together constitute the "Fort Worth Loan." The Fort Worth Loan was also guaranteed by guaranty contracts executed on March 28, 2007, by the Guarantor Defendants.

BMC Capital assigned its interests to Red Mortgage Capital, Inc., which, in turn, on December 19, 2009, assigned its interests to PNC. BHMDF failed to pay the monthly installment due on the Brownsville Loan in November of 2012. In September of 2013, Speeds Plus filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. *In re Speeds Plus, Inc.*, Case No. 3:13-BK-34901 (Bankr. N.D. Tex.). BHMDF's failure to pay and one guarantor's bankruptcy constituted defaults under the Brownsville Loan documents. The bankruptcy court confirmed Speeds Plus' bankruptcy plan on March 14, 2014. On April 30, 2014, BHMDF sold the Brownsville property. On May 12, 2014, BHMDF executed an agreement with PNC and the Guarantor Defendants, other than Riva Cano Smith, by which they agreed to release all liens against the Brownsville property in exchange for a partial payment from the proceeds of the sale of that property ("lien release agreement"). PNC retained an unsecured deficiency claim against the Guarantor Defendants for the remaining amount owed under the Brownsville Loan pursuant to the guaranty agreements.

BHMDF failed to pay the monthly installment due on the Fort Worth Loan in December of 2012. In July of 2015, instead of making payments as required by the Fort Worth Loan, BHMDF, Ltd. filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy

Code. *In re BHMDF, Ltd.*, Case No. 15-BK-42657 (Bankr. N.D. Tex.). The failure to pay and filing of bankruptcy constituted defaults under the terms of the Fort Worth Loan. On March 21, 2016, the bankruptcy court entered an order confirming BHMDF's bankruptcy plan. Pursuant to the plan, the Fort Worth property was sold and the proceeds of the sale were applied as a partial payment of sums due under the Fort Worth Loan. PNC retained an unsecured deficiency claim against the Guarantor Defendants for the remaining amount owed under the Fort Worth Loan pursuant to the guaranty contracts.

PNC alleges the Guarantor Defendants defaulted on the guaranty contracts, and PNC seeks from them $795,694.50, plus interest and attorney's fees. The Guarantor Defendants argue that PNC has not properly calculated amounts due, because PNC did not include all credits, payments, and offsets. The Guarantor Defendants also argue that as part of the May 6, 2014, Brownsville lien release agreement, PNC released Riva Cano Smith of any and all liability. On June 24, 2016, PNC filed a Motion for Summary Judgment on liability, the amounts owed, and on the issue of whether or not Smith was released by the lien release agreement. (ECF No. 20).

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.,* 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). If the moving party seeks summary judgment as to his opponent's claims or defenses,

"[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the non-moving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the non-moving party must set forth"—and submit evidence of—"specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party and resolve all disputed factual controversies in favor of the non-moving party—but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.,* 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the non-movant's burden. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the non-movant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence

to support a party's opposition to summary judgment," and "[a] failure on the part of the non-moving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III.   ANALYSIS

#### A.   LIABILITY

There is no genuine issue of material fact with respect to liability under the guaranty contracts. Plaintiff demonstrates that the Guarantor Defendants are in default and are liable for both the Brownsville Loan and the Fort Worth Loan. In order to recover on a guaranty contract as a matter of law, Plaintiff must prove "1) the existence and ownership of the guaranty contract; 2) the terms of the underlying contract by the holder; 3) the occurrence of the conditions upon which liability is based; and 4) the failure or refusal to perform by the guarantor." *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 206 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A guarantor may require that the terms of the guaranty be strictly followed. *Id*.

Evidence presented by PNC satisfies the four elements a plaintiff must prove to recover on a guaranty contract. On March 28, 2007, BHMDF entered into the Brownsville Loan and the Fort Worth Loan. PNC is the successor in interest to Red Mortgage Capital, Inc., which is the successor in interest to BMC Capital, LP.[1]  PNC is the current owner of the promissory notes issued in the Brownsville and Fort Worth Loans.[2]  On March 28, 2007, the Guarantor Defendants executed guaranty contracts on both loans, promising to "absolutely and unconditionally Guaranty full and punctual payment and satisfaction of the Indebtedness [defined in each Guaranty] of BHMDF, Ltd. to Lender, and the performance and discharge of all BHMDF Ltd.'s

---

[1] Ex. A at ¶ 5; App. at 36-37, 127-128 [ECF No. 22-1].
[2] *Id*.; Ex. A at ¶ 41.

obligations."[3]

PNC offered the sworn affidavit of Rick Wendell, Vice President of the Asset Resolution

Team at PNC Bank.  Wendell's affidavit proves the following: 1) the existence and ownership of

the guaranty contracts on the Brownsville and Fort Worth Loans executed by the Guarantor

Defendants;[4] 2) by the guaranty contracts, the Guarantor Defendants guaranteed payment of the

Brownsville and Fort Worth Loans;[5] 3) PNC has an unsecured deficiency claim against the

Guarantor Defendants on both the Brownsville and Fort Worth Loans;[6] and 4) amounts due to

PNC under the terms of the guaranty contracts have not been paid by the Guarantor Defendants.[7]

The guaranty contracts and Wendell's affidavit satisfy Plaintiff's burden of proof on the issue of

liability.  *Am. 10-Minute Oil Change, Inc. v. Metro. Nat. Bank-Farmers Branch*, 783 S.W.2d

598, 601 (Tex. App.—Dallas 1989, no writ) (holding an affidavit made on personal knowledge

of a bank officer and which identified the notes and guaranty and recited the principal and

interest due was sufficient evidence to support a summary judgment motion on the issue of

liability).

The Guarantor Defendants do not contest liability on either Loan or the guaranty

contracts.[8]  Instead, they only argue the amount claimed is incorrect because Plaintiff has not

applied all credits, payments, and offsets in their favor.  Because there is no genuine issue of

material fact as to liability on the guaranty contracts, Plaintiff's Motion for Summary Judgment

on liability is **GRANTED**.

---

[3] Ex. A-8, A-9, A-10, A-11, A-23, A-24, A-25, A-26, App. at 61-72, 153-164.
[4] Ex. A ¶¶ 13-16, 29-32.
[5] *Id*.
[6] *Id*. ¶¶ 36-40.
[7] *Id*. ¶¶ 41-43.
[8] Defendants admit default and liability in their Response. (ECF No. 29 at 8-9).

### B. AMOUNT OWED

Genuine issues of material fact exist with respect to how much Guarantor Defendants owe PNC on the Brownsville and Fort Worth Loans. Plaintiff argues it is owed $193,317.24 on the Brownsville Loan and $602,377.26 on the Fort Worth Loan, with interest continuing to accrue daily.[9] To support these allegations, PNC relies on Wendell's affidavit, which separates the amounts owed into principal, interest, late fees, and other miscellaneous fees, but PNC does not sufficiently explain how the amounts were calculated.[10] PNC does not provide sufficient evidence of how interest or late fees were calculated, or the basis for various miscellaneous fees. Plaintiff cites *American 10-Minute Oil Change* to support the notion that a bank officer's sworn affidavit is sufficient to support summary judgment, but here, however, unlike the affidavit in that case, the details of the calculations are not provided. 783 S.W.2d at 601.

The Guarantor Defendants present loan and payment histories that were provided by PNC during discovery, but the Court cannot discern their meaning from the record before it.[11] However, because Plaintiff has not proven to the Court's satisfaction that the amount owed is, as a matter of undisputed fact, equal to what is claimed, Plaintiff's Motion for Summary Judgment on the amount owed is **DENIED**.

### C. RELEASE

There is no genuine issue of material fact with respect to release of the Riva Cano Smith guaranty contract executed on March 28, 2007, on the Brownsville Loan.[12] On May 6, 2014, PNC signed a lien release agreement with guarantors Armadillo Entertainment Concepts, Inc.,

---

[9] Ex. A ¶¶ 39-40. (ECF No. 22-1) PNC breaks down the claimed amount owed on the Brownsville Loan as follows: $81,174.52 of principal, $101,135.58 in interest, $7,824.25 in late fees, and $3,182.89 in miscellaneous fees. PNC breaks down the claimed amount owed on the Fort Worth Loan as follows: $170,864.34 of principal, $408,205.04 in interest, $11,955.29 in late fees, and $11,352.95 in miscellaneous fees.
[10] *Id.*
[11] (ECF No. 30 at 12-21, 47-51).
[12] Ex. A-10 App. pp. 67-69 (ECF No. 22-1).

RMADILO, Inc., and Robert E. Smith, stating that liens against the Brownsville property would be released in exchange for partial payment of $793,754.87, which was applied to amounts owed on the Brownsville Loan.[13] The parties to the lien release agreement acknowledged and agreed that all other obligations and personal liability of the guarantors who signed the lien release agreement would continue.[14] Ms. Smith signed the agreement as a general partner of BHMDF and the president of RMADILO, Inc., but refused to sign it in her individual capacity, and was not defined in the lien release agreement as one of the "Guarantors."[15] To satisfy its burden of proof for summary judgment that Ms. Smith remains liable, Plaintiff cites the plain language of the lien release agreement and Ms. Smith's guaranty contract.

Ms. Smith alleges that her exclusion from the May 6, 2014, lien release agreement was the result of negotiations between PNC and the other guarantors, and that Ms. Smith understood the negotiations to discharge and release her guaranty contract obligations. Her affidavit claims PNC orally agreed "to release Ms. Smith from her guaranty obligations under the Brownsville Loan and accordingly excluded her from transactions related thereto."[16] This assertion is contrary to the plain language of both the lien release and Ms. Smith's guaranty contract, and foreclosed by the parol evidence rule and the statute of frauds.

Ms. Smith's guaranty contract states that "Release of any other guarantor or termination of any other guaranty of the Indebtedness *shall not affect the liability of Guarantor under this Guaranty*," "[n]o alteration of or amendment to this Guaranty shall be effective unless given in writing and *signed by the party or parties sought to be charged or bound by the alteration* or amendment," "[l]ender shall not be deemed to have waived any rights under this Guaranty *unless*

---

[13] Ex. A-14 App. pp. 89-108 (ECF No. 22-1).
[14] *Id*.
[15] *Id*. A-14 App. P. 89.
[16] (ECF No. 29 at 10).

8

*such waiver is given in writing* and signed by Lender," and that "[n]o delay *or omission* on the part of Lender *in exercising any right shall operate as a waiver of such right or any other right*."[17] Ms. Smith presents no evidence to support the notion that the lien release agreement can be construed to release her guaranty contract obligations.

First, the plain text of the lien release agreement unambiguously preserves her guaranty obligation, as the defined term "Loan Documents" includes Ms. Smith's guaranty contract:

> Borrower and each of the Guarantors hereby expressly agree and understand that *nothing in this Agreement shall in any way or manner affect Lender's ability to fully exercise all of the rights and remedies granted or available to Lender in connection with, under or pursuant to the Loan, the Loan Documents and/or at law or in equity in connection with any existing or future violation or default under the Loan Documents*, including without limitation, the default by the Borrower, AASA, Speeds Plus or Guarantors on any of their obligations to Lender which obligations include, without limitation, those contained in the Loan Documents and the Bankruptcy plan. (Emphasis added). [18]

Second, the lien release agreement expressly acknowledges the continued existence of Cano Smith's guaranty contract.[19] Third, the guaranty contract requires a waiver to be in writing. Fourth, the lien release agreement states that an omission in exercising one right does not waive any other right. There is no evidence in the lien release agreement or otherwise to support Ms. Smith's belief that omitting her from the lien release discharged her guaranty contract obligations. Finally, Ms. Smith did not sign the lien release in her individual capacity, so any alteration to her guaranty is invalid.

Next, Ms. Smith's reliance on negotiations allegedly resulting in an agreement that released her from liability and changed her obligations under the Brownsville guaranty agreement violates the parol evidence rule.[20] The lien release agreement contains a valid

---

[17] Ex. A-10 App. Pp 67-69 (ECF No. 22-1) Emphasis added.
[18] *Id*.
[19] Ex. A-14 App at 93.
[20] (ECF No. 30) at Ex. 3.

integration clause.[21] When parties have a valid integrated agreement, the parol evidence rule precludes enforcement of inconsistent prior or contemporaneous agreements. *F.D.I.C. v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992). When "the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract," the contract will be enforced as written, and cannot be added to or varied by parol evidence. *Bandera Drilling Co. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Texas App.—Eastland 2009, no pet.). The plain language of the lien release agreement unambiguously acknowledges the existence of Ms. Smith's guaranty contract and that PNC retains its right to pursue all obligations under the Brownsville Loan. The May 12, 2014, lien release agreement did not change Ms. Smith's guaranty obligations in any way. Therefore, the oral agreement Ms. Smith refers to would be an inconsistent prior or contemporaneous agreement, which would violate the parol evidence rule.

Finally, even if the Court credited Riva Cano Smith's claim of oral negotiations allegedly resulting in release of her liability, such a release would be unenforceable under the Texas statute of frauds. In Texas, an agreement "by one person to answer for the debt, default, or miscarriage of another person" must be in writing. Tex. Bus. & Com. Code Ann. § 26.01(b)(2). Ms. Smith's guaranty contract is therefore subject to the statute of frauds. When a written agreement is governed by the statute of frauds, it cannot be materially modified by subsequent oral agreement. *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967); *see also United Cent. Bank v. Yoon*, 3:13-CV-857-P, 2015 WL 11120516, at *6 (N.D. Tex. Mar. 4, 2015) (holding an alleged oral agreement did not constitute a waiver or release guarantors from liability because it was unenforceable). If PNC's alleged oral agreement eliminated all liability under Ms. Smith's

---

[21] Ex. A-14 App. at 100 (ECF No. 22-1).

guaranty contract, it would constitute a material modification, and thus be legally unenforceable.

Therefore, there is no genuine issue of material fact, and Plaintiff's Motion for Summary Judgment as to the alleged release of Ms. Smith's guaranty is **GRANTED**.

### IV.     CONCLUSION

No genuine issue of material fact exists as to liability and default under the Brownsville and Fort Worth Loans.  No genuine issue of material fact exists to support the claim that there was a release of Riva Cano Smith's guaranty.  However, genuine issues of material fact exist as to the amount owed on the guaranty contract.  Plaintiff's Motion for Summary Judgment is therefore **GRANTED IN PART** and **DENIED IN PART**.  A bench trial will be held on November 14, 2016, to address the details of the amount owed on each Loan.

**SO ORDERED.**

October 12, 2016.

_____
**BARBARA M. G. LYNN
CHIEF JUDGE**